IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARK ALAN CHAR, #A0234438, | CIV. NO. 18-00302 JMS-RLP |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT |
| vs. | |
| QUEENS HOSPITAL, DR. BRANDI GARY, JANE DOES 1-10, | |
| Defendants. | |

## **ORDER DISMISSING FIRST AMENDED COMPLAINT**

Before the court is pro se Plaintiff Mark Alan Char's first amended prisoner civil rights complaint ("FAC"). ECF No. 4.[1] Char alleges Defendants The Queen's Medical Center, West Oahu ("QMC West") physician Brandi Gary, M.D., and QMC West nurses Jane Doe 1, and Jane Does 1-10 (collectively, "QMC West Defendants"), violated his federal civil rights and state law when they failed to provide him adequate medical care between August 1-3, 2016.

Char fails to state a colorable claim against QMC West Defendants and the FAC is DISMISSED with leave granted to amend on or before November 30, 2018.

---

[1] Char is a pretrial detainee awaiting trial in four criminal cases in the Hawaii Circuit Court of the First Circuit: *See State v. Char*, 1PC161001291; 1PC161000903; 1PC131000810; 1PC031002555. http://www.courts.state.hi.us. (last visited 10/24/2018).

# I. BACKGROUND

On August 15, 2018, the court granted Char's in forma pauperis application and dismissed his Complaint without prejudice for lack of subject matter jurisdiction because Char failed to allege any federal causes of action.[2] *See* Order, ECF No. 3, PageID #20-22. The court explained that, even liberally construing his Complaint as alleging deliberate indifference to his serious medical needs under the Fourteenth Amendment, his statement of facts supported, "at most, an inference of negligence or medical malpractice." *Id.*, PageId #22. Char was given leave to amend his pleading if possible to state a federal claim. In the alternative, Char was notified that he could voluntarily dismiss this action and the court would vacate the Order Granting In Forma Pauperis and waive further payment of fees, allowing Char to bring his state law tort claims in the Hawaii state court.

On October 4, 2018, Char filed the FAC. ECF No. 4. Char now specifically alleges that each QMC West Defendant violated his rights under state law *and* under the Fourteenth Amendment when they allegedly provided him inadequate medical care between August 1-3, 2016. *See id.* at PageID #30. Otherwise, Char's statement of facts in the FAC is virtually identical to those in his original Complaint.

---

[2] Char explicitly alleged medical malpractice and negligence claims only.

Char alleges Dr. Gary failed to properly clean his wounds or give him a tetanus shot when she treated him at QMC West on August 1, 2016, at or about 8:00 p.m., which allegedly resulted in sepsis and kidney failure.

Char further claims that Jane Doe 1, who also treated Char at QMC West on the evening of August 1, 2016, prescribed him a different type of insulin than the type that he told her he normally used. Char alleges that, therefore, he did not receive insulin shots twice a day as he required, "jeopardizing [his] health and life." *Id.*, PageID #32.

Char alleges that QMC West nurses Jane Does 1-10, who were allegedly working at the main Honolulu Police Station between August 1-3, 2016, "refused to let [him] eat breakfast, lunch, & dinner" for "about three days" because he was "not able to use the wrong insulin" that Jane Doe 1 had prescribed. *Id.*, PageID #33.

Char claims that QMC West Defendants denied him adequate medical care in violation of the Fourteenth Amendment and that their actions constitute intentional and negligent infliction of emotional distress ("IIED" and "NIED") under state law. Char seeks general, compensatory, and punitive damages and costs and fees.

## II. STATUTORY SCREENING

The court is required to conduct a pre-Answer screening of all prisoners' pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). The court must dismiss a claim or complaint that is frivolous, malicious, fails to state a claim for relief, or seeks damages from defendants who are immune from suit. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under §§ 1915(e)(2) and 1915A(b) involves the same standard that used under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (screening under § 1915(e)(2)); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (screening under § 1915A). Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The "mere possibility of misconduct" or an "unadorned, the defendant-unlawfully-harmed me accusation" falls short of meeting this plausibility standard. *Id.* at 678-79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d

4

962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). Leave to amend must be granted if it appears the plaintiff can correct the defects in the complaint. *Lopez*, 203 F.3d at 1130. If the complaint cannot be saved by amendment, dismissal without leave to amend is appropriate. *Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

### III. DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and an affirmative link between the injury and the violation of his rights. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

**A.  Color of State Law**

Private hospitals, doctors, and nurses are not generally considered state actors amenable to suit under § 1983. *See Briley v. California*, 564 F.2d 849, 855-

5

856 (9th Cir. 1977) (noting that "private hospitals and physicians have consistently been dismissed from § 1983 actions for failing to come within the color of state law requirement of this section"); *see also Babchuk v. Indiana Univ. Health, Inc.*, 809 F.3d 966, 970-71 (7th Cir. 2016). "[T]o show that a private action is in fact state action, the plaintiff must show that there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Grijalva v. Shalala*, 152 F.3d 1115, 1119 (9th Cir. 1998) *vacated on other grounds by* 526 U.S. 1096 (1999) (citations and quotation marks omitted); *see also West*, 487 U.S. at 54 (holding that a doctor employed part-time by the state acted under color of law when he treated inmates in a state prison); *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1146, 1150 (9th Cir. 2011) (holding county hospital's medical committee members were state actors because the hospital was a public entity and defendants' authority flowed directly from the state).

Char alleges that Dr. Gary and Jane Doe 1 treated him at QMC West on or about 8:00 p.m., August 1, 2016. But nothing in the FAC suggests that Dr. Gary and Jane Doe 1 were acting under color of state law when they treated Char at QMC West. Char fails to state a claim under § 1983 against Dr. Brandy and Jane

Doe 1, and his federal claims against them are DISMISSED.[3]

To the extent that Char raises a claim against QMC West itself, and this is not evident in the FAC, he fails to show that it was acting under color of state law and such claims are also DISMISSED.

**B.     Official Capacity Claims**

Char alleges all QMC West Defendants acted in their official and individual capacities.  An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991).  Such a suit "is *not* a suit against the official personally, for the real party in interest is the entity."  *Graham*, 473 U.S. at 166.

Char does not name the Honolulu Police Department ("HPD") or the City and County of Honolulu ("Honolulu C&C") as Defendants, or allege facts that show QMC West's connection or nexus to them.  A local government entity such as HPD or Honolulu C&C may not be sued under § 1983 for an injury inflicted solely by their employees or, as presumably alleged here, their agents.  Instead, it

---

[3] Char says that Jane Does 1-10 treated him at the main Honolulu Police Station, sufficiently suggesting a nexus between them and the State to allege that they were acting under color of state law for the purposes of this Order.

is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. Neither HPD nor Honolulu C&C (through any alleged connection with QMC West) may be held liable for the actions of QMC West Defendants unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers," or if the alleged constitutional deprivation was "visited pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id*. at 690-91.

Char fails to allege any facts showing that any QMC West Defendant acted pursuant to HPD or Honolulu C&C policy and procedures. Char's claims against all official capacity QMC West Defendants are DISMISSED.

**C.    Fourteenth Amendment:  Inadequate Medical Care**

Even if all QMC West Defendants were acting under color of state law, Char must set forth facts that show:

> (i) [they] made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) [they] did

8

not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of [their] conduct obvious; and (iv) by not taking such measures, [they] caused . . . plaintiff's injuries.

*Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (holding the Fourteenth Amendment's objective standard governs pretrial detainees' medical care claims and rejecting the Eighth Amendment's subjective standard for such claims); *cf. Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (adopting the Second and Ninth Circuits' conclusion that the Fourteenth Amendment's objective standard applies to pretrial detainees' medical-care claims); *Darnell v. Pineiro*, 849 F.3d 17, 34-35 (2d Cir. 2017) (same).

The "'mere lack of due care by a state official' does not 'deprive an individual of life, liberty, or property under the Fourteenth Amendment.'" *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (holding that negligent conduct does not offend the Due Process Clause)). That is, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the [Constitution]." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) (discussing deliberate indifference under the Eighth Amendment's subjective standard).

The "inadvertent failure to provide adequate medical care cannot be said to

constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Id.* at 105-06. Indifference to medical needs must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990); *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *cf. Wood*, 900 F.2d at 1335 (holding a delay in medical treatment, without a showing of resulting harm, is insufficient to support a deliberate indifference violation); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). "Thus, the plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard.'" *Gordon*, 888 F.3d at 1125 (quoting *Daniels*, 474 U.S. at 330-31).

From the bare facts alleged in the FAC, the court is unable to infer that Dr. Gary, Jane Doe 1, or Jane Does 1-10 "purposefully, knowingly, or perhaps even recklessly" denied Char adequate medical care, thus, objectively placing him at substantial risk of suffering serious harm. *Miranda*, 900 F.3d at 353. First, Char's allegation that Dr. Gary failed to properly clean Char's wounds and give Char a tetanus shot, without more, does not show that she made an intentional decision or acted in a manner that put him in substantial risk of serious harm. Without any

10

further context — such as the circumstances surrounding when Dr. Gary saw Char, whether others saw him first, whether she provided instructions that were not followed, or even whether he was alert and could relate his medical history to her or others — these facts accepted as true only suggest a lack of due care, that is, negligence or medical malpractice.

Similarly, Char's brief and conclusory claim that Jane Doe 1 prescribed him a different type of insulin than what he normally used, without more, does not allow the plausible inference that she made an intentional decision to prescribe Char the *wrong* insulin in reckless disregard of a substantial risk to his health, and that she took no steps to abate a perceived risk. Char does not explain whether Jane Doe 1 had the authority to prescribe him insulin or required supervision of a physician to prescribe this drug. Nor does Char explain how the insulin she prescribed *differed* from the type he usually received. That is, whether the brands or dosages were different, whether one was ingested and the other was injected, or why one type was medically preferable over another. Finally, Char does not allege any adverse reactions that he had to the insulin Jane Doe 1 allegedly prescribed; he does not say that he went into insulin shock or coma or detail other indications that he suffered serious harm. Rather, Char's claims suggest that he *refused* to take the new prescription. To be clear, Char provides *no facts* from which the

court can infer that Jane Doe 1 made a conscious decision to prescribe a medically inferior type or ineffective dose of insulin, knowing that it might put Char at a substantial risk of suffering serious harm, and then took no measures to abate that risk, such as ensuring that he was medically monitored thereafter. Char says Jane Doe 1 "jeopardiz[ed his] health and life," but he asserts no facts showing that he suffered any adverse consequences from the changed prescription. FAC, ECF No. 4, PageID #32. Again, these facts may support medical malpractice, negligence, even gross negligence, but they are insufficient to support a constitutional violation.

Finally, Char's claims against Jane Does 1-10, are similarly vague and insufficient to state a claim. Char alleges that, Jane Does 1-10 "refused to let [him] eat breakfast, lunch & dinner, because [he] was not able to use the wrong insulin[,]" and that he was therefore denied food for three days. *Id.*, PageID #33. First, Char does not explain how he was denied food for three days if Jane Doe 1 prescribed the insulin at or about 8:00 p.m. on August 1, 2016, and Jane Does 1-10 were alleged to have been in charge of his food only until August 3, 2016. More important, Char's vague facts suggest that a medical decision to withhold his food was made in response to his either receiving the incorrect insulin or refusing to take the insulin that Jane Doe 1 had prescribed. The facts, however, only allow

speculation regarding what Jane Does 1-10 did or did not do to violate Char's rights. "The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard." *Watkins v. Tuolumne Cty. Jail*, 2018 WL 502392, at *1 (E.D. Cal. Oct. 16, 2018) (citing *Iqbal*, 556 U.S. at 678 and *Moss*, 572 F.3d at 969).

Char again fails to allege sufficient facts for the court to plausibly infer that any QMC West Defendant violated his constitutional rights. The FAC is DISMISSED for failure to state a colorable claim, with leave granted to amend, if possible, to correct the noted deficiencies.[4]

## IV. **LEAVE TO AMEND**

Char may file an amended complaint on or before November 30, 2018, 2018, to cure the deficiencies in his FAC. If Char files an amended complaint, he must comply with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the District of Hawaii. Local Rule 10.3 requires that an amended complaint be complete in itself without reference to any prior pleading. An amended complaint will supersede the preceding complaint. *See Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015);

---

[4] If Char is unable to amend his claims against QMC West Defendants to plausibly state a claim against them, the court will decline supplemental jurisdiction over his state law claims and dismiss this action. *See* 28 U.S.C. § 1367(c)(3).

LR99.7.10. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form. Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

## V. 28 U.S.C. § 1915(g)

If Char fails to file an amended complaint, or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis under 28 U.S.C. § 1915,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI. CONCLUSION

(1) Char's first amended Complaint is DISMISSED. Char may file an amended pleading that cures the deficiencies in his claims on or before November 30, 2018.

(2) If Char fails to timely file an amended pleading that cures the deficiencies in his claims, this action will be automatically dismissed for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).

(3) The Clerk of Court is DIRECTED to send Char a prisoner civil rights complaint form so that he may properly amend his pleadings to comply with this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 1, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Char v. Queens Hosp., et al.*, No. 1:18 cv 00302 JMS RLP; Scrng '18 Char 18 302 jms (dsm FAC 14 A med. care, off. cap.)